**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LYON WORKSPACE PRODUCTS, L.L.C., *et al.*[1], | Case No. 13-2100 |
| Debtor. | Jointly Administered |
| | Honorable Janet S. Baer |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Wednesday January 23, 2013 at 9:30 a.m., or as soon

thereafter as counsel may be heard, we will appear before the Honorable Janet S. Baer, or any

judge sitting in her stead, in Room 615 of the Everett McKinley Dirksen Building, 219 South

Dearborn Street, Chicago, Illinois 60604, and present the **DEBTORS' MOTION FOR**

**INTERIM AND FINAL ORDERS: (A) AUTHORIZING DEBTORS TO (1) OBTAIN**

**POSTPETITION FINANCING WITH PRIORITY OVER CERTAIN**

**ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE**

**ESTATE PURSUANT TO SECTION 364(C) OF THE BANKRUPTCY CODE; AND (2)**

**USE CASH COLLATERAL AND OTHER COLLATERAL AND GRANTING**

**ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE**

**BANKRUPTCY CODE; AND (B) SCHEDULING A FINAL HEARING,** a copy of which

has been served upon you.

---

[1] The other Debtors in these jointly administered chapter 11 cases are Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

Respectfully submitted,

LYON WORKSPACE PRODUCTS, L.L.C.


By:  s/ Daniel A. Zazove
      One of the Proposed Attorneys for the
      Debtor

Daniel A. Zazove, ARDC No. 3104117
Kathleen A. Stetsko, ARDC No. 6297704
Charles R. Gibbs, ARDC No. 6309075
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
312.324.8400

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LYON WORKSPACE PRODUCTS, L.L.C., *et al.*[1], | Case No. 13-2100 |
| Debtor. | Jointly Administered |
| | Honorable Janet S. Baer |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS: (A) AUTHORIZING DEBTORS TO (1) OBTAIN POSTPETITION FINANCING WITH PRIORITY OVER CERTAIN ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE PURSUANT TO SECTION 364(C) OF THE BANKRUPTCY CODE; AND (2) USE CASH COLLATERAL AND OTHER COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE; AND (B) SCHEDULING A FINAL HEARING**

Lyon Workspace Products, L.L.C., *et al.* (collectively, the "Debtors") submit this motion, pursuant to sections 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(e) of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, for entry of interim and final orders[2]: (a) authorizing the Debtors to (1) obtain postpetition financing with priority over certain administrative expenses and secured by liens on property of the estate pursuant to section 364(c) of the Bankruptcy Code, and (2) use cash collateral and other collateral and granting adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code; (b) scheduling a final hearing on the Motion; and (c) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

## I.    JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is

---

[1] The other Debtors in these jointly administered chapter 11 cases are Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

[2] The proposed order attached to this Motion is the proposed interim financing order.

a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 361, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), as supplemented by Bankruptcy Rules 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2.

## II.   BACKGROUND

2.      On January 19, 2013, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of the filing of this Motion, no official committee has been appointed.

3.      The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the Declaration of Robert Wanat in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "Wanat Declaration") incorporated herein by reference.

## III.   SUMMARY OF THE RELIEF REQUESTED

4.      By this Motion, the Debtors request entry of interim and final orders authorizing the Debtors to:

> (a)      obtain postpetition financing described in the Interim Financing Order (the "DIP Credit Facility") up to the aggregate principal amount of $22,327,344 from Capital One Leverage Finance Corp., Cole Taylor Bank or one of their affiliates (the "DIP Lender"), provided that the DIP Credit Facility:
>
>> 1.  have priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 326, 330, 331, 503(b), 506(c), 507(a) and 507(b) of the Bankruptcy Code, subject to the Carveout (as defined in the Interim Order);

2.   be secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtor, including, but not limited to, real property (including, without limitation, all leasehold interests, mineral leases, and mineral and water rights), accounts and accounts receivable, cash and cash equivalents, chattel paper, commercial tort claims, contracts (including the rights to receive payment(s) under any contract), deposit accounts (including, without limitation, any deposit account holding Cash Collateral), documents, equipment, fixtures, general intangibles (including payment intangibles, copyrights, patents, trademarks, trade names, trade styles, and all applications therefore, and all licenses to use any such property, and all other intellectual property, including all goodwill of the business related thereto), goods, instruments (including promissory notes), inventory, investment property (including all securities, security accounts, security entitlements, commodities, and commodity accounts), interests in subsidiaries, partnerships, and joint ventures (howsoever evidenced), rolling stocks (including titled and untitled vehicles), letter of credit rights, supporting obligations, tax refunds, and bankruptcy-related causes of action, including but not limited to all causes of action under chapter 5 of the Bankruptcy Code, including §§ 544 through 550 and § 553 or other applicable law) and securities, and proceeds thereof, (collectively, the "<u>DIP Collateral</u>") subject only to (1) the Carveout, as defined below; and (2) liens permitted by the Loan Documents to the extent such exist and are valid, unavoidable and senior on the Petition Date (the "<u>Prepetition Liens</u>"); and (3) any valid, perfected liens on equipment owned by the Debtor.

3.   be secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected junior security interests in and liens upon all prepetition and postpetition property of the Debtors that is subject to the Permitted Liens.

(b)      use the Cash Collateral pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and other collateral in which the secured lenders have interests (the "<u>Pre-Petition Collateral</u>") both for operating purposes and to pay down the Prepetition Debt, and provide adequate protection with respect to any diminution in the value of the secured lenders' interests in the Pre-Petition Collateral resulting from the use of the Pre-Petition Collateral, including the Cash Collateral, or imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)      on an interim basis, (i) forthwith borrow from the DIP Credit Facility up to the aggregate amount of $22,327,344 (based upon the formula described herein) from the DIP Lender under the DIP Credit Facility, (ii) use cash collateral to repay the Prepetition Debt as set forth in the Interim Financing Order, and (iii) provide the adequate protection hereinafter described; and

(d)      schedule, pursuant to Bankruptcy Rule 4001, within 30 days of the entry of the Interim Financing Order, a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of a final order authorizing the DIP Credit Facility on a final basis, as set forth in this Motion.

## IV.   BASIS FOR RELIEF

**A.   The DIP Credit Facility will allow the Debtors to maintain their operations through the Asset Sale.**

5.      The Debtors do not have sufficient available sources of working capital to finance their business operations without the DIP Credit Facility and the use of the Pre-Petition Collateral, including the Cash Collateral.  The Debtors have an immediate need to obtain financing to permit, among other things, the continued operation of their business, to maintain postpetition business relationships with vendors, suppliers and customers, and to satisfy other working capital needs pending consummation of a sale of substantially all of their assets (the "<u>Asset Sale</u>").  In the absence of immediate authorization of the DIP Credit Facility and use of the Pre-Petition Collateral, the Debtors could not continue to operate their business, and immediate and irreparable harm to the Debtors and their estates would occur.

6.      The ability of the Debtors to obtain sufficient working capital and liquidity through the use of the Pre-Petition Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the Debtor.  The preservation and maintenance of the going concern value of the Debtors pending consummation of the Asset Sale is integral to maximizing recoveries for the Debtors' stakeholders.  For these reasons, the Debtors have an immediate need for adequate postpetition financing.

7.      The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Moreover, the DIP Lender, as the Debtors' prepetition lender, possesses unique knowledge of the Debtors' business and restructuring needs.  Further, the Debtors do not believe that any lender other than the DIP Lender would be willing to loan new money to the Debtors on a basis which is junior in priority to the existing Permitted Liens.  Therefore, the Debtors represent, in their sound business judgment, that the proposal for debtor-in-possession financing as provided by the DIP Lender is the most favorable under the circumstances, and addresses the Debtors' reasonably foreseeable liquidity needs.

8.      The Debtors believe that the terms of the DIP Credit Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The Debtors believe that the proposed adequate protection for the DIP Lender will be sufficient to protect such parties from any diminution in value of their interest in the prepetition collateral.

9.      The adequate protection terms set forth in the proposed interim and final orders have been negotiated in good faith among the Debtors and the DIP Lender.

**B.      Terms of the DIP Credit Facility**

10.     The salient terms of the DIP Credit Facility are specifically set forth in the proposed Interim Financing Order filed with this Motion.  The Debtors submit that the terms of the DIP Credit Facility are customary and reasonable for a financing of this type.

**C.      Compliance with Local Rule 4001-2**

11.     Local Rule 4001-2, which governs cash collateral and financing motions filed with this Court, requires the Debtors to (a) highlight certain provisions contained in the DIP

Credit Facility documents, (b) identify the location of any such provision in the proposed form of order, and (c) state the justification for the inclusion of such provision.  The Debtors believes that Local Rule 4001-2 is minimally implicated by the provisions of the DIP Credit Facility, but to the extent that Local Rule 4001-2 is implicated, that such provisions are justified and necessary in the context and circumstances of this case.

a.    **Highlighted Provisions**

12.    Local Rule 4001-2(A)(2)(b) provides for additional disclosure with respect to provisions that bind the Debtors with respect to the validity, perfection or amount of the DIP Lender's pre-petition debt.  Paragraph I of the Interim Financing Order agrees that for the purposes of adequate protection the Prepetition Lenders' interest in the Prepetition Collateral was not less than $19,500,000 and Paragraph 8(b) of the Interim Financing Order provides that the Debtors have waived challenges to the validity, perfection or amount of the Prepetition Liens, but the finality of such a waiver is subject to a review and challenge provision set forth in Paragraph 8(a) of the Interim Financing Order.  The challenge procedure provides parties-in-interest with the review periods set forth in Local Rule 4001-2(A)(2)(c).  The Debtors submit that the provisions of the Interim Financing Order are justified under the circumstances and in compliance with the local rule.

13.    Local Rule 4001-2(A)(2)(c) provides for additional disclosure with respect to provisions that seek to waive any rights the estate may have under section 506(c) of the Bankruptcy Code.  Paragraphs M and 7 of the Interim Financing Order provide that the Debtors waive all rights, if any, they might otherwise assert against the Pre-Petition Collateral or the Post-Petition Collateral pursuant to §§ 506(c) or 552(b) of the Bankruptcy Code; provided, however, that this waiver is subject to the entry of a Final Order and review by any committee or

other interested party.  The Debtors assert that such provisions are appropriate because they were a condition to (a) the Secured Lenders' willingness to consent to the Debtors' use of their Cash Collateral, and (b) the DIP Lender's willingness to provide the DIP Credit Facility.

14.     Local Rule 4001-2(A)(2)(d) provides for the disclosure of any provision that grants liens on avoidance actions.  Definition 27 of the Interim Financing Order provides the DIP Lender with a lien on bankruptcy-related causes of action, including but not limited to all causes of action under chapter 5 of the Bankruptcy Code, including §§ 544 through 550 and § 553 or other applicable law, but only in the circumstance that the Aggregate Debt is in excess of the Prepetition Debt.  The Debtors believe that such provision is appropriate because it only takes effect if the size of the DIP loan is greater than the Post-Petition Collateral (excluding the bankruptcy causes of action) and liens on avoidance actions are required to adequately protect the DIP Lender's loan.  As such, the DIP Lender required such liens in order to provide the DIP Credit Facility.

15.     Local Rule 4001-2(A)(2)(f) provides for the disclosure of any provision that provide for different treatment of professionals retained by a committed appointed by the United States Trustee than professionals retained by the Debtors.   Provision 6(b) of the Interim Financing Order provides a $25,000 cap on costs and expenses used by the Committee's professionals to investigate and make a challenge to the validity, perfection and amount of the DIP Lender's Prepetition Liens.  The Debtors submit that this cap is reasonable under the circumstances and was required by the DIP Lender in order to provide the DIP Credit Facility.

16.     Local Rule 4001-2(A)(2)(h) requires the Debtors to disclose any declarations that the Interim Financing Order does not impose lender liability on any secured creditor.  The Debtors do not believe that this Local Rule applies – while Paragraph 8 of the Interim Financing

Order provides that the Debtors, their estates and parties-in-interest waive claims related to the Prepetition Debt, the Prepetition Liens and Prepetition Documents, such waiver is subject to the Challenge procedure by parties-in-interest, including any committee or trustee and it is not a blanket declaration that the Interim Financing Order does not impose lender liability.  In any event, such provision was a condition for the Pre-Petition Secured Lender to allow the use of the Pre-Petition Collateral.

17.     Local Rule 4001-2(A)(2)(i) provides for additional disclosure with respect to provisions that grant the lender expedited relief from the automatic stay under section 362 of the Bankruptcy Code, or relief from the automatic stay without further order of this Court. Paragraph 5(b) of the Interim Financing Order provides that 30 days after the Termination Date, the DIP Lender shall have the right, free of the restrictions of Bankruptcy Code § 362, to take possession of the Aggregate Collateral.  The Debtors assert that such provision is appropriate because it was a condition to the DIP Lender's willingness to provide the DIP Credit Facility, and it is subject to a 10 business day period for the Debtors to seek an order of the Court determining that any Event of Default which allegedly led to the Termination Date did not occur.

18.     Local Rule 4001-2(A)(2)(j) provides for additional disclosure with respect to provisions that provide for joint and several liability on loans for Debtors in jointly administered cases.  The Debtors are all jointly and severally liable for the DIP Credit Facility.  The Debtors submit that such provision is appropriate because the Debtors are jointly and severally liable on the Prepetition Loan.

19.     Local Rule 4001-2(A)(3) requires that all financing motions provide a summary of all provisions that must be highlighted under Local Rule 4001-2(A)(2) and a summary of the essential terms of the proposed financing.  The Debtors assert that they have complied with this

requirement by attaching the Interim Financing Order, which contains all of the terms of the DIP

Credit Facility, including those essential terms specifically referenced in Local Rule 4001-

2(A)(3).

20.     Lastly, Local Rule 4001-2(A)(4) provides that all financing motions must provide

a budget covering the time period in which the order shall remain in effect.  In satisfaction of

such requirement, attached to the Interim Financing Order as Exhibit B is a copy of the approved

budget (the "Budget").  The Debtors shall file updated versions of the budget with the Court as

such updates become available.

## V.     AUTHORITY FOR REQUESTED RELIEF

21.     Bankruptcy Code section 364(c) provides:

> (c)     If the trustee is unable to obtain unsecured credit allowable under section
> 503(b)(1) of this title as an administrative expense, the court, after notice and a
> hearing, may authorize the obtaining of credit or the incurring of debt —
>
>> (1)     with priority over any or all administrative expenses of the kind
>> specified in section 503(b) or 507(b) of this title;
>>
>> (2)     secured by a lien on property of the estate that is not otherwise
>> subject to a lien; or
>>
>> (3)     secured by a junior lien on property of the estate that is subject to a
>> lien.

11 U.S.C. § 364(c).

22.     Bankruptcy Rule 4001(c) governs the procedures for securing authorization to

obtain debtor-in-possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain
> credit no earlier than 15 days after service of the motion.  If the motion so
> requests, the court may conduct a hearing before such 15 day period expires, but
> the court may authorize the obtaining of credit only to the extent necessary to
> avoid immediate and irreparable harm to the estate pending a final hearing.

Fed.R.Bank.P. 4001(c)(2).

23.     The Debtors seek entry of the Interim Financing Order to avoid immediate and irreparable harm to the estate.  Accordingly, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to grant the relief requested herein.

**A.      The DIP Credit Facility Should Be Approved**

24.     The Debtors are unable to procure adequate postpetition financing in the form of unsecured credit or unsecured debt with an administrative priority.  The circumstances of this case require the Debtors to obtain financing under section 364(c) of the Bankruptcy Code.

25.     After determining that postpetition financing was available only under section 364(c) of the Bankruptcy Code, the Debtors negotiated the DIP Credit Facility pursuant to their business judgment, which is to be accorded deference so long as it does not run afoul of the provisions of and policies underlying the Bankruptcy Code.  *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("The cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

26.     The proposed DIP Credit Facility is required to preserve and maintain the Debtors' going concern value and is, therefore, in the best interests of the Debtors' estates and creditors.  The availability of credit under the DIP Credit Facility is necessary to provide working capital for the Debtors to continue to operate their business pending consummation of the Asset Sale.  Moreover, the available credit will afford the Debtors' vendors and suppliers the

necessary confidence to continue ongoing relationships with the Debtors and also will be viewed favorably by the Debtors' employees and customers, thereby enhancing the prospect for a successful sale.  Accordingly, the Debtors request that this Court authorize the Debtors to obtain the Post-Petition Financing pursuant to the DIP Credit Facility and under the proposed Interim Financing Order and Final Order.

27.    The terms and conditions of the DIP Credit Facility are fair and reasonable and were negotiated by the parties in good faith.  Accordingly, the Pre-Petition Secured Lender and the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code with respect to the postpetition financing.

**B.    The Court Should Authorize the Use of the Pre-Petition Collateral Including the Cash Collateral**

28.    In addition to the need for debtor-in-possession financing, the Debtors have a critical need for the immediate use of prepetition collateral, including cash collateral.  The Debtors seek to sell substantially all of their assets as a going concern.  Inability to use the Secured Lenders' collateral would have an immediate and detrimental effect on the Debtors' operations and their ability to reach the highest return through a sale.  As a result, if the Debtors are unable to use the prepetition collateral to pay down their prepetition secured debts, the availability under the DIP Credit Facility will be insufficient to pay present operating expenses, including payroll, and to pay vendors to ensure a continued supply of services and materials essential to the Debtors' continued viability.  Indeed, the Debtors would be unable to operate their business before the closing of the Asset Sale, which would severely impair creditor recoveries.  In sum, in order to enable the Debtors to consummate the Asset Sale, approval of both the DIP Credit Facility and the use of the prepetition collateral is imperative.

**C.       The Court Should Allow the Debtors to Provide Adequate Protection**

29.       Under section 363(c)(2) of the Bankruptcy Code, the Debtors may not use Cash Collateral without the consent of the secured lenders or authority granted by the Court.  Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest.  The secured lenders have consented to the use of their Pre-Petition Collateral and Cash Collateral, conditioned upon the Debtors providing the adequate protection described herein and in the proposed Interim Financing Order:

30.       As adequate protection for any diminution in the value of the Pre-Petition Collateral resulting from (a) the Debtors' use, sale, lease or other disposition of the Pre-Petition Collateral; and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, on which the Secured Lenders provided their consent in accordance with section 363(c)(2), Secured Lenders are granted the following:

> (a) Adequate Protection Claim;
>
> (b) Replacement Liens;
>
> (c) a super-priority administrative claim in accordance with section 364(c)(1) and 507(b) of the Bankruptcy Code; and
>
> (d) interest on the Pre-Petition Obligations at the contract non-default rate and reasonable fees and expenses as of the Petition Date.

31.       The Debtors are informed and believe that the PBGC does not have a valid and perfected lien on any of the Debtors' collateral and is a non-priority unsecured creditor.  As such, it is not entitled to any adequate protection or other consideration under Section 363(e).

32.       The Debtors request that the Court find that the foregoing adequate protection to be granted to the Pre-Petition Secured Lender is reasonable and sufficient to protect the interests

of the Pre-Petition Secured Lender without prejudice to the rights of the Pre-Petition Secured Lender to request additional adequate protection.

33.    The Debtors additionally request that the Court order that the security interests and liens granted to the DIP Lender and the Pre-Petition Secured Lender pursuant to the DIP Credit Facility and the proposed Interim Financing Order constitute valid and duly perfected security interests and liens without the filing or recordation of UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by the Interim Financing Order or take any other action to perfect such liens, mortgages and security interests granted to the DIP Lender or the Pre-Petition Secured Lender.

**D.    The Interim Approval Should Be Granted**

34.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code and to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtors' estate.

35.    The Debtors request that the Court enter the proposed Interim Financing Order: (a) authorizing the Debtors from and after the entry of the Interim Financing Order until the Final Hearing to borrow from the DIP Credit Facility up to an aggregate amount of $22,327,344; (b) authorizing the Debtors to utilize the Cash Collateral as provided in the proposed Interim Financing Order; and (c) granting the adequate protection as provided in the proposed Interim Financing Order.  This relief will enable the Debtors to operate their businesses in the ordinary

course and avoid immediate and irreparable harm and prejudice to their estate and all parties in interest, pending the Final Hearing.

## VI.   NOTICE WITH RESPECT TO INTERIM FINANCING ORDER

36.   Notice of this Motion has been given to: (a) the Office of the United States Trustee (the "U.S. Trustee"); (b) the creditors on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (c) counsel to the Debtors' secured lenders; (d) all known parties with liens of record on assets of the Debtors as of the Petition Date; (e) the Internal Revenue Service; (f) the Illinois Department of Revenue; and (g) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no further notice is necessary.

## VII.   NOTICE WITH RESPECT TO FINAL FINANCING ORDER

37.   The Debtors further request that the Court schedule the Final Hearing and authorize it to serve a copy of the signed Interim Financing Order, which fixes the time and date for the filing of objections, by first-class mail upon: (a) the Office of the United States Trustee (the "U.S. Trustee"); (b) the creditors on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (c) counsel to the Debtors' secured lenders; (d) all known parties with liens of record on assets of the Debtors as of the Petition Date; (e) the Internal Revenue Service; (f) the Illinois Department of Revenue; (g) counsel to any statutory committee appointed in this case; and (h) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no further notice is necessary.

WHEREFORE, the Debtors respectfully requests that the Court enter an order (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Respectfully submitted,

LYON WORKSPACE PRODUCTS, L.L.C.


By:  s/ Daniel A. Zazove _____
        One of Debtors' Attorneys

Daniel A. Zazove, ARDC No. 3104117
Kathleen A. Stetsko, ARDC No. 6297704
Charles R. Gibbs, ARDC No. 6309075
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
312.324.8400