## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| LYON WORKSPACE PRODUCTS, L.L.C., *et al.*[1] | ) Case No. 13-2100 |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Hon. Janet S. Baer |

## FINAL ORDER AUTHORIZING DEBTORS TO: (A) INCUR POSTPETITION DEBT AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO CAPITAL ONE LEVERAGE FINANCE CORP., AS AGENT

This matter came before this Court on the motion (the "Motion") of Lyon Workspace Products, L.L.C. *et al.* (the "Debtors") requesting this Court enter an order authorizing Debtors to: (a) incur Postpetition Debt and (b) grant adequate protection and provide security and other relief to Capital One Leverage Finance Corp. ("Capital One"), in its capacity as agent ("Prepetition Agent") to the lenders under the Prepetition Documents ("Prepetition Lenders"), and Capital One in its capacity as agent ("Postpetition Agent"; together with Prepetition Agent, "Agents") to the lenders under the Postpetition Documents ("Postpetition Lenders"; together with Prepetition Lenders, the "Lenders"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Petition Date, subject to the rights of parties in interest as set forth in Paragraph 8 below.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED AND THE COURT HEREBY FINDS THAT:**

---

[1]  The other Debtors in these cases are: Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C. and Lyon Workspace Products, Inc.

A.     On the Petition Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code.  Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.     The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.     On February 6, 2013, the Committee was appointed in the above-captioned case.

D.     Subject to Paragraph 8 of this Order, the Debtors admit, stipulate and agree that:

1.     The Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among the Debtors, Prepetition Agent and Prepetition Lenders.

2.     The Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents.

3.     As of the Petition Date, Debtors are liable for payment of the Prepetition Debt, subject to the provisions of Paragraph 8 below, that the Prepetition Debt shall be an allowed secured claim in an amount not less than $18,203,139.60, exclusive of accrued and accruing Allowable 506(b) Amounts.

4.     No offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise.

5.     The Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt.

6.     Upon the entry of this Order, Prepetition Agent's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Petition Date, the Prepetition Agent asserts, and the Debtors have no basis to contest, that the value of the Prepetition Lenders' interest in the

Prepetition Collateral was not less than $19,500,000.00; provided, however, that nothing herein shall prejudice Prepetition Agent's or any Prepetition Lender's right to later: (1) assert that its interest in the Prepetition Collateral lacks adequate protection; and (2) seek a higher valuation of the Prepetition Collateral.

7.      Debtors do not have, and hereby release any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Prepetition Agent and Prepetition Lenders, and each of their affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

8.      By reason of taking any actions pursuant to this Order, neither Agent nor Lenders are in control of the operations, management or liquidation of any of the Debtors or its assets.

9.      Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to the adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of their interests in the Prepetition Collateral from and after the Petition Date.

10.     The Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all amounts potentially chargeable to Prepetition Agent or Prepetition Lenders under Code § 506(c).  Accordingly, subject to the provisions of Paragraph 8 of this Order, Debtors hereby waive any claim against Prepetition Agent and Prepetition Lenders pursuant to Code § 506(c), the enhancement of collateral provisions of Code § 552 or any other legal or equitable doctrine (including, without limitation, unjust enrichment).

E.      Debtors need to incur Postpetition Debt as provided herein in order to enhance the possibility of maximizing the value of the Debtors' businesses.

F.      Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses.  Except as provided below,

Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Lenders.

G.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

H.      The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

I.      Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agent's and Lenders' consent to the provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

J.      The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED AS SET FORTH HEREIN, AND THAT:**

1.      Authorization to Use Cash Collateral.  Debtors are authorized to use Cash Collateral solely to pay Prepetition Debt and Postpetition Debt as set forth in Paragraph 2(d) of this Order and otherwise in accordance with and pursuant to the terms and provisions of this Order.  So long as any Prepetition Debt or Postpetition Debt remains outstanding, Debtors may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.

2.      Procedure for Use of Cash Collateral.

(a)      Delivery of Cash Collateral to Postpetition Agent.  Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon receipt thereof, and such Cash Collateral shall be applied in accordance with Paragraph 2(d) of this Order.

(b)      <u>Cash Collateral in Agents' or Lenders' Possession</u>.  Postpetition Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into any Agent's or any Lender's possession or control which constitute Aggregate Collateral or proceeds thereof.

(c)      <u>Cash Collateral in Third Party's Possession</u>.  Debtors shall cause all depository banks (other than Capital One) (the "<u>Other Banks</u>") at which any Debtor maintains a deposit account to remit the available balance in such accounts to the Blocked Account on a daily basis, subject to any valid and enforceable rights of setoff or other secured claims in favor of the Other Banks as of the Petition Date.

(d)      <u>Application of Cash Collateral</u>.  Postpetition Agent is authorized to apply all Cash Collateral now or hereafter in any Agent's or any Lender's possession or control as follows: (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts, (2) second, to the payment of all other Prepetition Debt in accordance with the Prepetition Documents; (3) third, to payment of Postpetition Debt consisting of Postpetition Charges; and (4) fourth, to payment of other Postpetition Debt in accordance with the Postpetition Credit Agreement.  All such applications to Prepetition Debt shall be final, subject only to (i) the rights of the Committee or other Challenge Parties to asset a Challenge during the Investigation Period in accordance with Paragraph 8 below, and (ii) the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications to Prepetition Debt resulted in the payment of an unsecured prepetition claim of Prepetition Agent and Prepetition Lenders.  Any amounts disgorged in connection with any such objection or determination shall be first applied to reduce the Postpetition Debt dollar-for-dollar.  All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee.

(e)      <u>Prohibition Against Use of Cash Collateral</u>.  Except as provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Agents have consented to such order; or (2) at the time such an order is entered, the Aggregate Debt has been indefeasibly paid in full, in cash.

3.      <u>Authorization To Incur Postpetition Debt</u>.

(a)     <u>Postpetition Documents</u>.  Debtors are hereby authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Documents; (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order; (3) to pay the Postpetition Charges, including interest, fees and costs, and (4) subject to the rights of parties in interest set forth in Paragraph 8 of this Order, to provisionally pay Allowable 506(b) Amounts. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, the terms of the Interim Order and this Order, this Order shall govern and control.

(b)     <u>Permitted Uses of Postpetition Debt</u>.  Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order, (2) subject to the rights of the Committee and other parties in interest set forth in Paragraph 8 of this Order, to repay the Prepetition Debt in the principal amount not to exceed the DIP Commitment, (3) to the extent required to pay those expenses enumerated in the Budget, including the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance, (4) to pay the Postpetition Charges, and (5) subject to the rights of parties in interest set forth in Paragraph 8 of this Order, to provisionally pay Allowable 506(b) Amounts. If Postpetition Lender advances monies to Debtors and Debtors use such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.  Upon the entry of this Order, the Prepetition Facility LCs shall be deemed to be Postpetition Documents, the Debtors shall assume all reimbursement and other obligations related to the Prepetition Facility LCs, and all of the reimbursement and other obligations related thereto shall be deemed to be Postpetition Debt.

(c)     <u>Additional Terms of Postpetition Debt</u>.

(i)     <u>Maximum Amount</u>.    The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the DIP Commitment.

(ii)     <u>Interest</u>.  The Postpetition Debt shall bear interest at a per annum rate equal to the Postpetition Interest Rate.

(iii)    Closing Fee.  In consideration of the Postpetition Lenders' agreement to provide the Postpetition Debt, Debtors shall pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "Closing Fee") in an amount equal to one percent (1%) of the DIP Commitment. The Closing Fee was fully earned upon entry of the Interim Order and the closing of the Postpetition Credit Agreement, but shall be payable upon the earlier of (A) a sale or liquidation of Borrowers' assets or (B) the Termination Date.

(iv)    Maturity.  The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.

(v)    Guarantors.  By its consent to entry of this Order, each Guarantor stipulates and agrees that: (A) each Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or additional financing by Postpetition Agent and Postpetition Lenders pursuant to Code § 364; and (B) each Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, including, without limitation, all Postpetition Debt, and any refinancing thereof (except as otherwise agreed in writing by Guarantors and Agents).

(vi)    Joint and Several Liability of Debtors.  The Debtors are jointly and severally liable on the Prepetition Debt, and the obligations of each Debtor under this Order shall be joint and several.

(vii)    Control Agreements.  All deposit account control agreements or similar control agreements in effect as of the Petition Date shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(d)    Superpriority Administrative Expense Status; Postpetition Liens.

(i)    The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code, and the Postpetition Debt is entitled to the protections of Code § 364(e).

(ii)    In addition, Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of Postpetition Lenders to secure the Postpetition Debt.  The Postpetition Liens:  (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens subject only to Permitted Priority Liens, without any further action by Debtors or Postpetition Agent and without the execution, filing or recordation of any financing statements, security agreements,

mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.

(iii)   Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Agent such financing statements, mortgages, instruments and other documents as Postpetition Agent may request from time to time, and any such documents filed by Postpetition Agent shall be deemed filed as of the Petition Date. Further, Prepetition Agent shall serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Lender without further action by any party.

(e)   Prohibition Against Additional Debt.   Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364:  (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Aggregate Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

4.   Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.   Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to the protections afforded a party acting in "good faith" under Code § 363(m) and adequate protection as set forth herein to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Petition Date):

(a)   Priority of Prepetition Liens/Allowance of Prepetition Lenders' Claim.   Subject to the reservation of rights of all parties in interest pursuant to the terms of Paragraph 8 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Postpetition Liens and the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the applicable Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition Agent's

and Prepetition Lenders' claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of the Code § 506 in an amount not less than $18,203,139.60, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)     Replacement Liens.   Prepetition Agent is hereby granted the Replacement Liens, for the benefit of Prepetition Lenders, as security for payment of the Prepetition Debt.  The Replacement Liens:  (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.   Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Prepetition Agent such financing statements, mortgages, instruments and other documents as Prepetition Agent may request from time to time in respect of the Replacement Liens.

(c)     Allowed Code § 507(b) Claim.   If and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and Prepetition Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Cases (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

5.     Termination Date; Rights and Remedies.

(a)     Effect of Termination Date.   Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, and (ii) Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 2(d) of this Order.

(b)    Rights and Remedies.  After the Termination Date:  (1) Agents may seek relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and, subject to any necessary relief from the automatic stay, shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law; and (2) Debtors shall cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agents.  Notwithstanding the foregoing, during the ten (10) business day period following the Termination Date, Debtors may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; provided, however, that from and after the Termination Date, Postpetition Lenders shall have no obligation to advance Postpetition Debt to Debtors.

(c)    Access to Collateral.  Upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Postpetition Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Postpetition Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Postpetition Agent, calculated on a per diem basis.

6.    Carveout.

(a)    Carveout Terms.  The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Petition Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Petition Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of

the estate (other than property subject to an unavoidable lien in favor of the Prepetition Agent or the Postpetition Agent) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral. Further, Postpetition Lender shall have the right to reserve against the DIP Commitment an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals. Upon the Termination Date, and notwithstanding anything herein to the contrary, Postpetition Lenders shall provide Postpetition Debt to the Debtors in an amount equal to the Carveout amount for each Carveout Professional determined in clause (1) above. Except as set forth in the preceding sentence, Postpetition Lenders shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the Termination Date.

(b)     Carveout Usage.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, the Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Agents' or Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agents' or Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' or Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agents or Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Agents.

(c)     Carveout Procedure.   The Debtors shall periodically, upon the request of the Postpetition Agent, provide to the Postpetition Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate

amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Agents and Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agents or any Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

7.      No Surcharge. In the exercise of their business judgment, Debtors (or any Trustee) agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agents and Lenders. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and all the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agents and Lenders under Code § 506(c). Therefore, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 522, or any other legal or equitable doctrine (including, without limitation, unjust enrichment).

8.      Reservation of Rights; Bar of Challenges and Claims. The stipulations and representations contained in this Order, including, without limitation, in Paragraphs A-S, shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)      Challenge Procedure. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) days to

-12-

initiate such action.  If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(b)    Bar of Challenges and Claims.  If the Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Prepetition Agent and Prepetition Lenders, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of Prepetition Agent and Prepetition Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Prepetition Agent, Prepetition Lenders and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

9.    Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), (a) Postpetition Agent shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) Prepetition Agent shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

10.    Plan.  Unless Agents consent thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless the Aggregate Debt shall be paid in full in cash on

the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

11.   <u>Application of Sale Proceeds</u>.   All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted to Agents for application in accordance with Paragraph 2(d) of this Order.

12.   <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtors hereby waive their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); and (b) to consent to setoff pursuant to Code § 553 (unless agreed to in writing by the Postpetition Agent). If any order is entered permitting any claims pursuant to Code § 503(b)(9) that are not provided for in the Budget, it shall constitute an Event of Default under this Order.

13.   <u>Indemnification</u>.  Debtors shall indemnify and hold harmless Agents and Lenders in accordance with the Postpetition Credit Agreement and the Prepetition Credit Agreement.

14.   <u>No Marshaling</u>.  No Agent, Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

15.   <u>Postpetition Charges</u>.  All Postpetition Charges are hereby approved and shall be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges, <u>provided</u>, <u>however</u>, Postpetition Agent shall provide the Debtors, the Committee and the United States Trustee with copies of all documents evidencing the Postpetition Charges consisting of professional fees (which may be redacted or withheld to the extent necessary to maintain confidential and/or privileged information).

16.   <u>Force and Effect of Prepetition Documents and Postpetition Documents</u>. Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents, the Interim Order, and this Order, this Order shall govern and control.  To the extent

there exists any conflict among the terms of the Motion, the Postpetition Documents and this Order, this Order shall govern and control.

17.    <u>Modification of Stay</u>.  Subject to Paragraph 4 of this Order, the automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders solely to the extent necessary to effectuate the provisions of this Order.

18.    <u>No Waiver</u>.  Agents and Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agents or Lenders, as applicable, and directed to Debtors.  No failure of Agents or Lenders to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agents or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy.  Further, this Order shall not constitute a waiver by Prepetition Agent or the Prepetition Lenders of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

19.    "<u>Responsible Person</u>."  By taking any actions pursuant to this Order, Prepetition Agent, Postpetition Agent, Prepetition Lenders and Postpetition Lenders shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

20.    <u>Release</u>.  Upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, Debtors shall execute and deliver to Postpetition Agent and Postpetition Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents.

21.    <u>Amendments</u>.  Debtors, Postpetition Agent and the Postpetition Lenders required under the Postpetition Credit Agreement may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; <u>provided</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

22.    <u>Proof of Claim</u>.  Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.  Notwithstanding the foregoing or any subsequent order of Court concerning proof of claim filing requirements, Prepetition Agent is authorized (but not obligated) to file a single master proof of claim in **Case No. 13-2100** on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

23.    <u>Binding Effect</u>.  Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing.  If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order (including, without limitation, Paragraphs 2(e), 3(e) and 7); and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt.  Except as otherwise explicitly set

forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

24.   <u>Previously Incurred Postpetition Debt</u>.  All Postpetition Debt allowed and incurred under the Interim Order shall be deemed to be Postpetition Debt for all purposes under this Order and shall be entitled to the priority and other protections set forth herein.

25.   <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

_____
Hon. Janet S. Baer
United States Bankruptcy Judge

Dated:  February 27, 2013

## EXHIBIT A

## DEFINED TERMS

1.    ***Aggregate Collateral.***   Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    ***Aggregate Debt.***   Collectively, the Prepetition Debt and the Postpetition Debt.

3.    ***Allowable 506(b) Amounts.***   To the extent allowable under Code § 506(b) taking into account any recovery under Code § 506(c), (a) interest at the default rate of interest as set forth in the Prepetition Credit Agreement, (b) interest at the default rate of interest set forth in the Prepetition Credit Agreement, and (c) all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Agent and Prepetition Lenders in connection with: (i) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (ii) the representation of Prepetition Agent and Prepetition Lenders in the Cases, including in defending any Challenge.

4.    ***Blocked Account.***   Account No. 312407 483 6, Account No. 312407 487 7, and Account No. 312407 492 7, each at Capital One Bank.

5.    ***Budget.***   The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, with the written consent of Postpetition Agent and the Postpetition Lenders required under the Postpetition Credit Agreement.

6.    ***Carveout.***   Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements as may be awarded by the Court to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 6 of this Order.

7.    ***Carveout Professionals.***   Perkins Coie LLP, Focus Management Group USA, Inc., Kurtzmann Carson Consultants, Sugar Felsenthal Grais & Hammer LLP and any financial advisors authorized by the Court to be retained by the Committee, and the United States Trustee.

8.    ***Cases.***   The chapter 11 cases or any superseding chapter 7 cases of the Debtors.

9.    ***Cash Collateral.***   All "cash collateral," as that term is defined in Code § 363(a), in which Agents (on behalf of Lenders) have an interest, all deposits subject to setoff rights in favor of Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

10.   *Challenge*.  A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Agent and Prepetition Lenders, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 8 of this Order.

11.   *Challenge Party*.  The Committee, any Trustee, or other party-in-interest with the requisite standing.

12.   *Code*.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

13.   *Committee*.  Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

14.   *Debtors*.  Lyon Workspace Products, L.L.C., Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C. and Lyon Workspace Products, Inc.

15.   *DIP Commitment*.  $22,327,344.

16.   *Event of Default*.  At Postpetition Agent's election, (a) Debtors failure to comply with the covenants or perform any of their obligations in strict accordance with the terms of this Order; and (b) the occurrence and continuance of any "Event of Default" (as that term is defined in the Postpetition Credit Agreement) first arising after the Petition Date under the Postpetition Credit Agreement, including, without limitation, any breach of the Postpetition Sale Covenants.

17.   *Final Hearing*.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

18.   *Guarantors*.  L&D Group, Inc., Miller Global Solutions, L.L.C., and any other Person who becomes a "Loan Party" (as defined in the Prepetition Credit Agreement) pursuant to a joinder agreement to the Prepetition Credit Agreement.

19.   *Guaranty*.  Collectively, Article XV of the Prepetition Credit Agreement and each separate guaranty, in form and substance satisfactory to the Prepetition Agent, delivered by each Guarantor that is not a party to the Prepetition Credit Agreement (which guaranty shall be governed by the laws of the country in which such Guarantor is located), as it may be amended or modified and in effect from time to time.

20.   *Interim Hearing*.  The interim hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

21.   *Interim Order*.  The order authorizing the Debtors to incur Postpetition Debt pending the Final Hearing entered at or in connection with the Interim Hearing.

22. ***Investigation Period.*** (a) With respect to any party-in-interest other than the Committee, the period from the Petition Date until the date that is seventy-five (75) days after the entry of this Order; and (b) with respect to the Committee, the date that is sixty (60) days after the date that Committee counsel is retained. The Investigation Period may be extended by order of the Court or with the written agreement of the Agents provided that any extension by order of the Court without the written consent of the Agents shall constitute an Event of Default under this Order.

23. ***Obligations.*** The "Obligations", as that term is defined in the Postpetition Credit Agreement.

24. ***Permitted Priority Liens.*** Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date.

25. ***Permitted Variance.*** An amount equal to 10% of the amounts set forth in the Budget, with respect to (a) each weekly line item set forth therein, or (b) the aggregate total expenditures provided for therein, measured each calendar week for the period beginning on the Petition Date and ending on the last day of such week.

26. ***Person.*** Any natural person, corporation, firm, joint venture, partnership, limited liability company, association, enterprise, trust or other entity or organization, or any government or political subdivision or any agency, department or instrumentality thereof.

27. ***Petition Date.*** January 19, 2013.

28. ***Postpetition Charges.*** Interest at the applicable rate of interest under the Postpetition Credit Agreement and all fees, costs, and expenses provided for in the Postpetition Credit Agreement, including those incurred by Postpetition Agent and Postpetition Lenders in connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

29. ***Postpetition Collateral.*** All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including for the purposes of this Order claims and proceeds under Code §§ 544, 547, 548, 549, 550, and 553, *provided however*, that with respect to any proceeds of claims under Code §§ 544, 547, 548, 549, 550, and 553 other than claims against Agents or Lenders, to the extent such proceeds are in excess of $550,000, fifty percent (50%) of such proceeds in excess of $550,000), all leaseholds, all commercial torts, all interests in any joint venture, all liquor licenses and other licenses and permits, and all other "Collateral" (as that term is defined in the Postpetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

30. ***Postpetition Credit Agreement.*** That certain Debtor-In-Possession Credit Agreement dated as of January 23, 2013, by and between Debtors, Postpetition Agent and

Postpetition Lenders, as amended, modified, supplemented, replaced or refinanced from time to time.

31.    ***Postpetition Debt.***   All indebtedness or obligations of Debtors to Postpetition Agent and Postpetition Lenders incurred on or after the Petition Date pursuant to this Order or otherwise, including all Obligations and any advances made by Postpetition Lenders to pay the Carveout.

32.    ***Postpetition Documents.***   The Postpetition Credit Agreement and the "Loan Documents" (as that term is defined in the Postpetition Credit Agreement).

33.    ***Postpetition Interest Rate.***   The rate of interest set forth in the Postpetition Credit Agreement.

34.    ***Postpetition Liens.***   Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens.

*35.*    ***Postpetition Sale Covenants.***   The covenants set forth in Section 6.32 of the Postpetition Credit Agreement

36.    ***Prepetition Collateral.***   All of the "Collateral" (as that term is defined in the Prepetition Documents) existing as of the Petition Date, and all proceeds, rents, issues, profits and products thereof.

37.    ***Prepetition Credit Agreement.***   That certain Credit Agreement dated as of November 30, 2007, by and among Debtors, Prepetition Agent and Prepetition Lenders, as amended, modified and supplemented from time to time.

38.    ***Prepetition Debt.***   (a) All indebtedness or obligations under the Prepetition Documents as of the Petition Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

39.    ***Prepetition Documents.***   The Prepetition Credit Agreement and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement).

*40.*    ***Prepetition Facility LCs.***   All standby and commercial letters of credit or similar instruments, issued under the Prepetition Credit Agreement.

41.    ***Prepetition Liens.***   Prepetition Agents' asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

42.    ***Prepetition Third Party Documents.***   Collectively, Debtors' deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Agent or Prepetition Lenders have an interest.

43.    *Priority Liens*.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

44.    *Replacement Liens*.  Priority Liens in the Postpetition Collateral granted to Prepetition Lender pursuant to this Order, subject only to the Postpetition Liens and the Permitted Priority Liens.

45.    *Termination Date*.  At Postpetition Agent's election, the earlier to occur of:  (a) the date on which Postpetition Agent provides, via electronic mail, facsimile or overnight mail, written notice to counsel for Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; and (b) the date on which a sale of all or substantially all of the Aggregate Collateral is consummated; and (c) April 19, 2013.

46.    *Trustee*.  Any trustee appointed or elected in the Cases.

## EXHIBIT B

## BUDGET



**LYON WORKSPACE PRODUCTS**
**Cash Flow Projection - DIP Line Budget R2**
*(Amounts in Thousands of Dollars)*

| Week Ending | 1/25 | 2/1 | 2/8 | February 2/15 | 2/22 | 3/1 | 3/8 | March 3/15 | 3/22 | 3/29 | 4/5 | April 4/12 | 4/19 | Total 13 Weeks | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
| **Cash Flow** | | | | | | | | | | | | | | | |
| Collected Funds Posted to Revolver | 1,820 | 1,872 | 1,739 | 1,598 | 1,577 | 1,560 | 1,327 | 1,250 | 1,250 | 1,250 | 1,500 | 1,500 | 1,500 | 19,743 | |
| Total Cash Collections | 1,820 | 1,872 | 1,739 | 1,598 | 1,577 | 1,560 | 1,327 | 1,250 | 1,250 | 1,250 | 1,500 | 1,500 | 1,500 | 19,743 | |
| **Disbursements** | | | | | | | | | | | | | | | |
| 1  Vendor/Trade | 627 | 744 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 856 | 744 | 744 | 10,562 | COD post filing/forecast adj. for higher margin |
| 2  Payroll | 317 | 484 | 192 | 484 | 342 | 484 | 180 | 450 | 160 | 575 | 150 | 450 | 150 | 4,418 | Includes estimated sales commissions |
| 3  Outside Labor | 125 | 125 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,350 | Installers and temp workers |
| 4  Utilities and IT | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 520 | All facilities |
| 5  Insurance | 219 | 24 | 335 | 75 | - | - | 335 | 75 | 75 | - | 335 | 80 | 75 | 1,473 | Health and Corp Insurance |
| 6  Sales Support | 10 | 10 | 138 | 10 | 10 | 10 | 138 | 10 | 10 | 10 | 68 | 80 | 10 | 514 | Leased auto, gas and T&A |
| 7  Professional Fees | | | | | | | | | | | | | | | |
|   ( a ) Focus Management Group | - | - | - | 80 | 80 | - | - | - | - | 80 | - | - | - | 161 | Final payments in April to be drawn from retainer |
|   ( b ) Perkins Coie LLP | - | - | - | 90 | 90 | 30 | - | - | - | 90 | 30 | - | - | 180 | Final payments in April to be drawn from retainer |
|   ( c ) KCC | - | 30 | - | - | - | - | - | - | - | - | - | - | - | 90 | |
|   ( d ) UCC Fees | - | 50 | 25 | - | - | - | 25 | - | 20 | 25 | - | - | 25 | 150 | Revised for add'l $75M on 2/25 |
|   ( e ) US Trustee | - | - | - | - | - | - | - | - | - | - | - | - | - | 20 | |
| 8  Debt Service | - | 222 | - | - | - | 217 | - | - | - | 227 | 227 | - | - | 666 | Includes Term principal and all interest payments |
| 9  Property and Sales Tax | - | - | - | - | 40 | - | - | - | 40 | - | - | - | - | 80 | Property taxes ($12M) not paid |
| 10  Impact of Cost Reduction Initiatives | - | (45) | (55) | (55) | (55) | (60) | (75) | (85) | (85) | (85) | (85) | (85) | (85) | (855) | (IN PROCESS) |
| Disbursements - continuing operations | 1,338 | 1,684 | 1,631 | 1,510 | 1,503 | 1,677 | 1,599 | 1,446 | 1,141 | 1,691 | 1,721 | 1,329 | 1,059 | 19,338 | |
| | | | | | | | | | | | | | | | |
| Net Cash Inflows/(Outflows) | 482 | 188 | 108 | 88 | 74 | (117) | (272) | (196) | 109 | (441) | (221) | 172 | 442 | 415 | |
| Cumulative Cash Increase/(Decrease) | 482 | 671 | 779 | 867 | 940 | 823 | 551 | 355 | 464 | 23 | (198) | (26) | 415 | 415 | |
| | | | | | | | | | | | | | | | |
| Availability | 775 | 420 | 99 | 86 | 75 | (111) | (253) | (255) | 49 | (198) | (437) | (385) | (68) | (68) | |



# LYON WORKSPACE PRODUCTS
## Cash Flow Projection - DIP Line Budget R2
*(Amounts in Thousands of Dollars)*

| Week Ending | 1/25 | February 2/1 | 2/8 | 2/15 | 2/22 | 3/1 | March 3/8 | 3/15 | 3/22 | 3/29 | April 4/5 | 4/12 | 4/19 | Total 13 Weeks | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
| *Memo - End Revolver Balance* | 13,276 | 13,088 | 12,979 | 12,891 | 12,818 | 12,935 | 13,207 | 13,403 | 13,294 | 13,735 | 13,956 | 13,785 | 13,343 | 13,343 | |
| **Accounts Receivable** | | | | | | | | | | | | | | | |
| Accounts Receivable - beginning | 14,116 | 13,546 | 12,924 | 12,435 | 12,337 | 12,260 | 12,200 | 12,373 | 12,623 | 12,873 | 13,123 | 13,123 | 13,123 | 14,116 | |
| Billings (Gross) | 1,250 | 1,250 | 1,250 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,250 | 18,500 | Lower sales volume weeks prior to and after close |
| Cash receipts | (1,820) | (1,872) | (1,739) | (1,598) | (1,577) | (1,560) | (1,327) | (1,250) | (1,250) | (1,250) | (1,500) | (1,500) | (1,500) | (19,743) | Assumes 6 week collection cycle |
| Adjustments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Accounts Receivable - ending | 13,546 | 12,924 | 12,435 | 12,337 | 12,260 | 12,200 | 12,373 | 12,623 | 12,873 | 13,123 | 13,123 | 13,123 | 12,873 | 12,873 | |
| **Inventory** | | | | | | | | | | | | | | | |
| Inventory - beginning | 15,652 | 15,662 | 15,624 | 15,587 | 15,542 | 15,496 | 15,451 | 15,406 | 15,361 | 15,316 | 15,270 | 15,225 | 15,180 | 15,652 | |
| Received into inventory, estimated | 950 | 902 | 902 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 1,085 | 902 | 13,420 | Procurement set to match shippable orders |
| Cost of goods sold, estimated | (940) | (940) | (940) | (1,130) | (1,130) | (1,130) | (1,130) | (1,130) | (1,130) | (1,130) | (1,130) | (1,130) | (940) | (13,930) | |
| Write-off adjustments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Inventory - ending | 15,662 | 15,624 | 15,587 | 15,542 | 15,496 | 15,451 | 15,406 | 15,361 | 15,316 | 15,270 | 15,225 | 15,180 | 15,142 | 15,142 | |
| **Borrowing Certificate** | | | | | | | | | | | | | | | |
| Borrowing Base: | | | | | | | | | | | | | | | |
| Accounts Receivable | 13,546 | 12,924 | 12,435 | 12,337 | 12,260 | 12,200 | 12,373 | 12,623 | 12,873 | 13,123 | 13,123 | 13,123 | 12,873 | 12,873 | |
| Ineligible Accounts | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | (4,138) | |
| AR Advance Rate | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | |
| Total Eligible Accounts Receivable | 9,408 | 8,786 | 8,297 | 8,199 | 8,122 | 8,062 | 8,235 | 8,485 | 8,735 | 8,985 | 8,985 | 8,985 | 8,735 | 8,735 | |
| *Availability from Accounts Receivable* | 7,997 | 7,468 | 7,052 | 6,969 | 6,903 | 6,852 | 7,000 | 7,212 | 7,425 | 7,637 | 7,637 | 7,637 | 7,425 | 7,425 | |
| Inventory | 15,662 | 15,624 | 15,587 | 15,542 | 15,496 | 15,451 | 15,406 | 15,361 | 15,316 | 15,270 | 15,225 | 15,180 | 15,142 | 15,142 | |
| Ineligible Inventory | (2,296) | (2,286) | (2,271) | (2,256) | (2,241) | (2,226) | (2,211) | (2,196) | (2,181) | (2,166) | (2,151) | (2,136) | (2,121) | (2,121) | Use and not replace ineligibles(packaging,paint,etc) |
| Eligible Inventory | 13,366 | 13,338 | 13,316 | 13,286 | 13,255 | 13,225 | 13,195 | 13,165 | 13,135 | 13,104 | 13,074 | 13,044 | 13,021 | 13,021 | |
| Advance Rate | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | |
| *Availability from Inventory* | 8,020 | 8,003 | 7,989 | 7,971 | 7,953 | 7,935 | 7,917 | 7,899 | 7,881 | 7,863 | 7,845 | 7,826 | 7,813 | 7,813 | |
| Total Collateral Value | 16,017 | 15,471 | 15,041 | 14,940 | 14,856 | 14,787 | 14,917 | 15,111 | 15,306 | 15,500 | 15,482 | 15,463 | 15,238 | 15,238 | |
| Reserves & LOC ($1.6M) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | (1,963) | |
| Collateral Block/Over Advance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Net Collateral | 14,054 | 13,508 | 13,078 | 12,977 | 12,893 | 12,824 | 12,954 | 13,148 | 13,343 | 13,537 | 13,519 | 13,500 | 13,275 | 13,275 | |