**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Lyon Workspace Products, LLC, *et al.*[1] | ) | Case No. 13-2100 (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |

**SUPPLEMENT TO THE SECOND AND FINAL APPLICATION OF PROTIVITI, INC. FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LYON WORKSPACE PRODUCTS LLC, *ET AL.***

Protiviti, Inc. ("*Protiviti*"), former financial advisor to the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, *et al.* (the "*Committee*"), appointed in the above-captioned bankruptcy cases, submits this Supplement (the "*Supplement*")[2] to its *Second and Final Application for Compensation and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.* (the "*Fee Application*").[3] In support of the Fee Application, Protiviti states:

On August 18, 2014, the Court held a hearing on Protiviti's Fee Application, in addition to several other professional firms employed in these Cases.[4] At the August 18th hearing, the Court asked Protiviti to file supplemental documentation addressing two discrete issues identified by the Court in its review of the Fee Application. The Court requested additional briefing with respect to (1) time spent by Protiviti's professionals related to plan and disclosure statement matters; and (2) time spent by Protiviti's professionals relating to analyzing avoidance

---

[1] The Debtors in these jointly administered chapter 11 cases are Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

[2] Protiviti incorporates by reference all factual allegations and legal support set forth in the Fee Application.

[3] (Dkt. 558.)

[4] Capitalized terms not defined in this Supplement shall bear the meaning given to them in the Fee Application.

SFGH:4833-2393-9102v1

actions. Each of these issues is addressed below and Protiviti requests that the Court grant the Fee Application in its entirety.

A.     **Standard for Reviewing Fees Requested by § 328 Professionals**

As the Committee's financial advisor, Protiviti was employed in these Cases under § 328 of the Bankruptcy Code,[5] which does not dictate application of the ordinary standard for review of § 327(a) professional fees under § 330 of the Bankruptcy Code, instead applying an "improvidence" standard in relation to authorizing professional fees. Under this standard, a reduction or denial of professional compensation may only be made if the "terms and conditions [of the professional's preapproved retention] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."[6] No such developments have occurred in these Cases, as Protiviti's time spent on plan and disclosure statement matters, and time spent analyzing avoidance actions, were a necessary and naturally contemplated service in Protiviti's role as financial advisor to the Committee, and provided significant benefit to the Debtors' estates.

Moreover, the Committee's analysis of avoidance actions ensured the viability of the Plan and identified the primary source of recoveries for unsecured creditors in these Cases. The Plan was ultimately accepted by general unsecured creditors, who voted almost unanimously in its favor. Protiviti requests that the Court grant the Fee Application in full and award its requested fees and expenses on a final basis.

---

[5]  (Dkt. 117.)

[6]  11 U.S.C. § 328(a); *see also Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 433 B.R. 19, 45 (N.D. Ill. 2010); *F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, 350 B.R. 835, 838-42 (E.D. Wis. 2006).

SFGH:4833-2393-9102v1

B.   **Protiviti's Time Spent on Plan and Disclosure Statement Issues was Necessary in its Role as the Committee's Financial Advisor and Within the Scope of its Original Engagement**

As the Committee's financial advisor, Protiviti provided critical support in these Cases to the Committee with respect to the process of formulating and confirming a viable joint plan of liquidation (the "*Plan*"). In this role, Protiviti and the Committee's other employed professionals completed an initial draft of the Plan, an accompanying disclosure statement (the "*Disclosure Statement*") and liquidating trust agreement (the "*LTA*," collectively referred to with the Plan and Disclosure Statement as the "*Plan Documents*") in April 2013. The Committee believed that the initial drafts of the Plan Documents would provide an acceptable means of liquidating the Debtors' remaining assets post-sale. But the process of drafting an agreeable joint Plan proved complex, involving numerous iterations of the Plan Documents based on input from multiple parties, analysis of the Debtors' remaining assets to ensure the Plan's feasibility, and delays to the process unattributable to the Committee or Protiviti which resulted in multiple material revisions of the Plan Documents.

Early on in these Cases, the Debtors and the Committee agreed to divide principal responsibility for various discrete tasks to avoid duplication and manage these Cases as effectively as possible. As the Committee's financial advisor, Protiviti was tasked initially with analyzing the benefit of a reorganization strategy in these Cases as opposed to the sale of the Debtors' assets under section 363 of the Bankruptcy Code. Once the parties in interest in these Cases reached an agreement that a sale and orderly liquidation of the Debtors' assets provided the best available global strategy, Protiviti undertook the responsibility of analyzing the Debtors' post-sale assets and provide a credible liquidation analysis in support of the Plan.

Furthermore, Protiviti's analyses were revised and updated throughout these Cases as different claims were resolved by the Debtors and the Committee over an eight month period,

including various administrative claims against the Debtors' estates, and also claims negotiated by the Committee with the Pension Benefit Guaranty Corporation, the resolution of which required updates and revisions to the liquidation analysis by Protiviti's professionals. As such, Protiviti's time spent on plan and disclosure statement issues in these Cases provided significant benefit to the Debtors' estates and were not improvident in light of the circumstances presented. The Committee and the Debtors presented a joint liquidating Plan that was overwhelmingly approved by voting parties, and provided a guide for the orderly liquidation of remaining estate assets to produce recoveries for the Debtors' various claimants. Protiviti requests that the Court grant the Fee Application and allow it its requested compensation in full and on a final basis.

C.     **Protiviti's Time Spent Analyzing Avoidance Actions was Necessary and Within the Contemplated Scope of its Original Engagement**

In its role as financial advisor to the Committee, a large part of Protiviti's responsibility was to analyze the value and potential recoveries from assets available to fund distributions to general unsecured creditors. Post-sale, the primary assets left in the Debtors' estates were avoidance actions (the "*Avoidance Actions*"). A preliminary analysis of the Avoidance Actions therefore proved paramount to the Committee's understanding of the Plan's feasibility, and to developing an effective exit strategy from these Cases.

The Committee's analysis of the Avoidance Actions required a coordinated investigation and valuation of the Debtors' prepetition activities by Protiviti and the Committee's legal counsel, Sugar Felsenthal Grais & Hammer LLP, involving over $12.7 million in gross transfers to more than 700 parties during the 90 days preceding the Debtors' chapter 11 filings. Developing a concrete understanding of the value of the Avoidance Actions—including any defenses that the Debtors or any successor trustee would likely encounter—was essential to the Committee's function as a fiduciary for general unsecured creditors. Using the Debtors'

SFGH:4833-2393-9102v1

financial data, Protiviti undertook to analyze the value of the Avoidance Actions using its own proprietary database to produce an objective valuation of these assets to the Debtors' estates. Protiviti's Avoidance Action analysis objectively quantifies the value of these actions by accounting for gross amounts paid to parties prepetition and generating a conservative estimate of net recoveries based on the most commonly asserted defenses to these types of actions under the Bankruptcy Code. Working collaboratively with the Committee's counsel and the Debtors' professionals, Protiviti's data analysis was incorporated into the final Liquidation Analysis, attached to the Disclosure Statement as Exhibit B. The Liquidation Analysis concluded that the value of the Avoidance Actions to general unsecured creditors (net of administrative and priority claims) ranged between $529,479 in a chapter 7 liquidation and $1.7 million in a chapter 11 liquidation, rendering the Avoidance Actions the single largest asset remaining in the Debtors' estates, and the only likely source of funding for the Debtors' various claimants.

In short, the fate of creditor recoveries in these Cases hung largely on a credible valuation of the Avoidance Actions. And as financial advisor to the Committee, Protiviti spent time to ensure that the Avoidance Actions were properly valued, and also undertook efforts to ensure that a Liquidating Trustee, once appointed, would be in a position to effectively pursue those actions to fund creditor recoveries. Protiviti's activities toward this end included the analysis and generation of individual matters with reports of net liability based on defenses likely to be raised by prospective defendants. As a result, Protiviti submits that the time its professionals spent with respect to the Avoidance Actions had material value to the Debtors' estates and its requested fees should be allowed under circumstances.

## CONCLUSION

Protiviti made every effort to effectively and efficiently fulfill its duties to the Committee as its financial advisor in these Cases. Both the Plan confirmation process and the time spent on

5

the Avoidance Actions were of material benefit to the Debtors' estates. Protiviti accordingly requests that the Court grant the Fee Application and approve its fees and expenses in their entirety.

*Protiviti, Inc.*

By:   /s/  Aaron L. Hammer
          One of the Committee's Attorneys

Aaron L. Hammer, Esq. (6243069)
Christopher J. Horvay, Esq. (1263315)
Jack O'Connor, Esq. (6302674)
**SUGAR FELSENTHAL GRAIS & HAMMER, LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:   312.704.9400
Facsimile:   312.372.7951
ahammer@SugarFGH.com
chorvay@SugarFGH.com
joconnor@SugarFGH.com

*Counsel for the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.*

**CERTIFICATE OF SERVICE**

I, Aaron L. Hammer, an attorney, hereby certify that I have caused a copy of the *Supplement to the Second and Final Application of Protiviti, Inc. for Compensation and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors of Lyon Workspace Products LLC, et al.* to be served on all parties requesting ECF notice on September 2, 2014.

By:  /s/  Aaron L. Hammer
      One of the Committee's Attorneys

Aaron L. Hammer, Esq. (6243069)
**SUGAR FELSENTHAL GRAIS & HAMMER, LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:   312.704.9400
Facsimile:    312.372.7951
ahammer@SugarFGH.com

*Counsel for the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.*