**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Lyon Workspace Products, LLC, *et al.*[1] | ) | Case No. 13-2100 (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |

**SUPPLEMENT TO THE SECOND AND FINAL APPLICATION OF SUGAR FELSENTHAL GRAIS & HAMMER LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LYON WORKSPACE PRODUCTS LLC, *ET AL.***

Sugar Felsenthal Grais & Hammer LLP ("*SugarFGH*"), former counsel to the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, *et al.* (the "*Committee*"),[2] appointed in the above-captioned bankruptcy cases, submits this Supplement (the "*Supplement*")[3] to its *Second and Final Application for Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.* (the "*Fee Application*").[4] In support of the Fee Application, SugarFGH states:

On August 18, 2014, the Court held a hearing on SugarFGH's Fee Application.[5] At the August 18th hearing, the Court asked SugarFGH to file supplemental documentation addressing three discrete issues identified by the Court in its review of the Fee Application. The Court requested additional briefing with respect to (1) time spent by SugarFGH's professionals related

---

[1] The Debtors in these jointly administered chapter 11 cases are Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

[2] SugarFGH is currently counsel to Norman Newman, as Liquidating Trustee for the Lyon Workspace Products Liquidating Trust, (the "*Liquidating Trustee*").

[3] SugarFGH incorporates by reference all factual allegations and legal support set forth in the Fee Application.

[4] (Dkt. 557.)

[5] Capitalized terms not defined in this Supplement shall bear the meaning given to them in the Fee Application.

to plan and disclosure statement matters; (2) time spent by SugarFGH's professionals relating to analyzing avoidance actions; and (3) time entries by SugarFGH's professionals that the Court identified as potentially duplicative. Each of these issues is addressed below and SugarFGH submits that its fees are reasonable under the circumstances, and requests that the Court grant the Fee Application in its entirety.

A.     **Standard for Reviewing Legal Fees**

When reviewing the reasonableness of fee applications, Courts in Illinois have relied on two analyses, the *Lodestar* analysis, which takes "into consideration the number of hours reasonably expended times a reasonable hourly rate,"[6] and an analysis of twelve "Johnson factors,"[7] which include an evaluation of:

- Time and labor required;
- Novelty and difficulty of questions;
- Skill required to perform legal services properly;
- Preclusion of employment by an attorney due to acceptance of a case;
- Customary fees;
- Time limitations imposed by the client or circumstances;
- The amount involved and result obtained;
- The experience, reputation, and ability of the attorneys; and
- Fees awarded in similar cases.[8]

Cases in this district have also held that compensation can be denied if the professional applying for compensation spent an unreasonable amount of time on a specific task.[9]

---

[6]     *In re McMullen*, 273 B.R. 558, 562 (Bankr. C.D. Ill. 2002).

[7]     *In re McNichols*, 258 B.R. 892, 905 (Bankr. N.D. Ill. 2001) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

[8]     *Id.*

[9]     *See In re Pettibone*, 74 B.R. 293 (Bankr. N.D. Ill. 1987); *In re Wildman*, 72 B.R. 700 (Bankr. N.D. Ill. 1987).

Under any applicable standard of review, SugarFGH's time spent and fees incurred in these Cases were reasonable. SugarFGH's efforts and time were necessary in fulfilling its role as counsel to the Committee, and requests that the Court grant the Fee Application in full and award its requested fees and expenses on a final basis.

**B.    SugarFGH's Time Spent on Plan and Disclosure Statement Issues was Necessary and Reasonable**

As counsel to the Committee, SugarFGH immediately involved itself in all aspects of these Cases, including the process of negotiating a plan of liquidation contemplated after the sale of the Debtors' assets. As the Cases moved forward, the Committee was tasked by the Debtors with primary responsibility for drafting and confirming a joint plan of liquidation (the "*Plan*"). In this role, SugarFGH and the Committee's other employed professionals completed an initial draft of the Plan, an accompanying disclosure statement (the "*Disclosure Statement*") and liquidating trust agreement (the "*LTA*," collectively referred to with the Plan and Disclosure Statement as the "*Plan Documents*") in April, 2013. The Committee believed that the initial drafts of the Plan Documents would provide an acceptable means of liquidating the Debtors' remaining assets post-sale. But the process of drafting an agreeable joint Plan proved complex, involving numerous iterations of the Plan Documents based on input from multiple parties, significant analysis of the Debtors' remaining assets to ensure the Plan's feasibility, and delays to the process unattributable to the Committee or SugarFGH which resulted in multiple material revisions of the Plan Documents.

*1.    SugarFGH's Time Spent on the Plan Documents Reflects its Position in these Cases as the Party Primarily Responsible for the Plan Documents*

Early on in these Cases, the Debtors and the Committee agreed to divide principal responsibility for various discrete tasks to avoid duplication and manage these Cases as effectively as possible. As legal counsel to the Committee and Debtors respectively, SugarFGH

3

and Perkins Coie LLP ("*PC*"), divided several comprehensive tasks on a rolling basis between the Debtors and the Committee, including the following:

| Tasks Assigned Primarily to Debtors | Tasks Assigned Primarily to the Committee |
|---|---|
| Asset Sale & Auction Process | Plan & Disclosure Statement Drafting, Solicitation, & Confirmation |
| Administrative Claims Negotiations | Analysis of Secured Lender Position |
| Executory Contracts Issues | PBGC Claims Negotiation |
| Post-Closing Transition with LWP Partners | Plan Feasibility Analysis |

This allocation of time and expense between the Debtors and the Committee was at all times deliberate and designed with the intention of eliminating duplication of efforts between the parties' various professionals. As legal counsel to the primary party responsible for the Plan Documents, SugarFGH was required to spend significantly more time on these issues than the other retained professionals in these Cases.

### 2. *Comments to the Plan Documents & Delays Outside SugarFGH's Control Required Significant Additional Time Working on & Revising the Plan Documents*

SugarFGH's time dedicated to the Plan Documents was also influenced by comments from numerous parties to the language and structure of the Plan Documents, and other delaying factors outside SugarFGH's control. SugarFGH initially drafted the Plan and Disclosure Statement in April 2013, but as the Cases progressed, the plan confirmation process became more complex than initially anticipated. Complications arose because of the Debtors' desire to resolve numerous administrative claims before moving to confirm a plan of liquidation. The Debtors' former principals also simultaneously sought various terms for themselves under the Plan. SugarFGH shouldered the responsibility of resolving these open issues through multiple drafts of the Plan, which in turn required additional revisions to the Plan Documents reflecting

4

these resolutions. Finally, the proposed Liquidating Trustee provided multiple rounds of comments pre-confirmation to ensure his satisfaction with the Plan Documents.

In total, the 427.7 hours spent by SugarFGH's professionals on issues relating to the Plan Documents includes necessary time spent generating, revising, or otherwise presenting the following work product:

- multiple drafts of a joint plan of liquidation;
- multiple draft disclosure statements;
- the Liquidating Trust Agreement;
- the Plan solicitation motion, ballots, and notices;
- a memorandum requested by the Debtors analyzing the role of disbursing agent as a possible alternative to a liquidating trustee;
- the order confirming the Plan;
- the Declaration of Michael Atkinson in support of the Plan;
- working with the proposed Liquidating Trustee to incorporate his comments to the Plan Documents;
- preparation for and attendance at the Plan confirmation hearing; and
- analyzing conditions to, and drafting the Notice of, the effective date of the Plan.

Each of these tasks called for multiple rounds of negotiation with—and comments from—the Debtors, their former principals, and the proposed Liquidating Trustee, which in turn led to the revision and generation of additional drafts of the Plan Documents. At its conclusion, however, the Committee delivered an agreed, joint Plan which voting parties overwhelmingly approved, leading to the successful conclusion of the Committee's involvement in these Cases.

### *3. SugarFGH's time Spent on Plan Issues is not Unreasonable when Compared to time Spent by Counsel in Similar Liquidating Chapter 11 Cases*

When analyzing the reasonableness of the time spent and fees incurred by SugarFGH on plan and disclosure statement issues under the Fee Application, SugarFGH's time and fees cannot be considered in a vacuum. An analysis of the aggregate time spent on these issues provides a greater understanding of the range of reasonability of time and fees associated with liquidating plan matters. Attached *Exhibit A* provides an analysis (the "*Fee Analysis*") of aggregate time and fees associated with plan and disclosure statement issues in numerous recent similar chapter 11 liquidating cases, pulling data from local matters and those across the country in jurisdictions similar to the Northern District of Illinois. The average value of the debtors' assets in these cases on their respective petition dates is approximately $75 million, similar to the Debtors' assets here.

The Fee Analysis shows that, on average, aggregate legal time associated with liquidating plans and disclosure statements exceeds 1,200 hours, and average aggregate legal fees for these matters totaled more than $650,000 (resulting in an average billing rate of about $541.00 per hour). By comparison, in these Cases the aggregate legal time spent on plan and disclosure statement issues by all retained legal professionals totaled just over 500 hours, with aggregate fees of $245,055, less than half the average time and fees spent in the cases in the Fee Analysis. Thus, when analyzing these matters objectively, SugarFGH's time and fees associated with leading negotiation, drafting, revising, and confirming the Plan and Plan Documents falls well within the range of reasonableness.

SugarFGH's time spent on plan and disclosure statement matters resulted in a direct benefit to the Debtors' estates—the Committee and the Debtors presented a joint liquidating Plan that was overwhelmingly approved by voting parties, and provided a guide for the orderly

6

liquidation of remaining estate assets to produce recoveries for the Debtors' various claimants. SugarFGH requests that the Court grant the Fee Application and allow it its requested compensation in full and on a final basis.

C.  **SugarFGH's Time Spent Analyzing Avoidance Actions was Necessary and Reasonable**

In its role as counsel to the Committee, SugarFGH undertook an analysis of assets available to fund distributions to general unsecured creditors. Post-sale, the primary assets left in the Debtors' estates were avoidance actions (the "*Avoidance Actions*"). As such, a preliminary analysis of the Avoidance Actions proved paramount to the Committee's understanding of the Plan's feasibility, and to developing an effective exit strategy from these Cases.

The Committee's analysis of the Avoidance Actions required investigation and valuation of the Debtors' prepetition activities by SugarFGH and the Committee's financial advisor, Protiviti, Inc., involving over $12.7 million in gross transfers to more than 700 parties during the 90 days preceding the Debtors' chapter 11 filings. Developing a concrete understanding of the value of the Avoidance Actions—including any defenses that the Debtors or any successor trustee would likely encounter—was essential to the Committee's function as a fiduciary for general unsecured creditors.

Simply put, understanding the value of the Avoidance Actions proved imperative to discerning whether the Plan itself was feasible. The Liquidation Analysis, attached to the Disclosure Statement as Exhibit B, provided that the value of the Avoidance Actions to general unsecured creditors (net of administrative and priority claims) ranged between $529,479 in a chapter 7 liquidation and $1.7 million in a chapter 11 liquidation, rendering the Avoidance Actions the single largest asset remaining in the Debtors' estates, and the only likely source of funding for claimants' recoveries in these Cases.

In short, the fate of creditor recoveries in these Cases hung largely on a credible valuation of the Avoidance Actions. And as counsel to the Committee, SugarFGH spent time to ensure that the Avoidance Actions were properly analyzed from a legal perspective, and also undertook preparation efforts to ensure that Liquidating Trustee, once appointed, would be in a position to effectively pursue those actions to fund creditor recoveries. As a result, SugarFGH submits that the 62.3 hours its professionals spent with respect to the Avoidance Actions had material value to the Debtors' estates and was reasonable under the circumstances.

**D.     SugarFGH Avoided Internal Duplication During the Application Period**

SugarFGH worked scrupulously to avoid internal duplication and unnecessary work during the Application Period. SugarFGH strove to staff projects appropriately, ensuring that the professionals assigned to a specific task possessed the appropriate level of skill and understanding of the issues involved. To the extent that SugarFGH staffed a partner and an associate on any given project, or that more than one attorney participated in high-level strategy conferences in these Cases, SugarFGH did so in the interest of the Committee and the Debtors' estates within SugarFGH's best business judgment.

The Court has identified time entries which it believes appear duplicative on the basis that senior, experienced professionals at SugarFGH worked on significant matters together, often in relation to strategy conferences between Aaron Hammer and Christopher Horvay which resulted in direction to junior professionals to perform tasks within these Cases. SugarFGH submits that these entries represented necessary internal strategy and case administration between its professionals, rather than duplication, because of the complex and urgent nature of the services performed, and should therefore be allowed to SugarFGH on a final basis.

Coordination of services is distinct from the concept of duplication; and where a case presents complex, urgent issues, participation by multiple professionals can be considered

8

necessary for the efficient administration of a bankruptcy case.[10] Throughout its involvement in these Cases, SugarFGH faced complex legal issues requiring immediate, speedy action, especially with respect to high level strategy matters. As counsel to the Committee, SugarFGH was charged with ensuring general unsecured creditors were effectively represented throughout these Cases. And as a result, the Committee required that SugarFGH's professionals, both junior and senior, coordinate some of their efforts to efficiently and effectively represent the Committee's interests.

## CONCLUSION

The efforts undertaken by SugarFGH in these Cases were necessary, actual and reasonable under the circumstances, and furthermore, SugarFGH made every effort to avoid unnecessary duplication of its efforts, both within the firm and with counsel to the Debtors. Both the Plan confirmation process and the time spent on the Avoidance Actions were of material benefit to the Debtors' estates. When comparing such fees to similar engagements, they are conclusively reasonable. SugarFGH accordingly requests that the Court grant the Fee Application and approve its fees and expenses in their entirety.

---

[10] *In re Chicago Lutheran Hospital Assoc.*, 89 B.R. 719, 736 (Bankr. N.D. Ill. 1988) (citing *In re Holthoff*, 55 B.R. 36 (Bankr. E.D. Ark. 1985)).

*Sugar Felsenthal Grais & Hammer LLP*

By: /s/ Aaron L. Hammer
       One of Its Attorneys

Aaron L. Hammer, Esq. (6243069)
Christopher J. Horvay, Esq. (1263315)
Jack O'Connor, Esq. (6302674)
**SUGAR FELSENTHAL GRAIS & HAMMER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.372.7951
ahammer@SugarFGH.com
chorvay@SugarFGH.com
joconnor@SugarFGH.com

*Counsel for the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.*

## CERTIFICATE OF SERVICE

I, Aaron L. Hammer, an attorney, hereby certify that I have caused a copy of the *Supplement to the Second and Final Application of Sugar Felsenthal Grais & Hammer LLP for Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors of Lyon Workspace Products LLC, et al.* to be served on all parties requesting ECF notice on September 2, 2014.

By:   /s/  Aaron L. Hammer
           One of the Committee's Attorneys

Aaron L. Hammer, Esq. (6243069)
**SUGAR FELSENTHAL GRAIS & HAMMER, LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:   312.704.9400
Facsimile:    312.372.7951
ahammer@SugarFGH.com

*Counsel for the Official Committee of Unsecured Creditors of Lyon Workspace Products, LLC, et al.*