UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 13-2100 |
| LYON WORKSPACE PRODUCTS, | ) | Jointly Administered |
| L.L.C., *et al.*, | ) | |
| Debtors. | ) | |
| | ) | Honorable Janet S. Baer |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER AWARDING TO SUGAR FELSENTHAL GRAIS & HAMMER LLP, ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, ALLOWANCE AND PAYMENT OF SECOND AND FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES**

| | | | |
|---|---|---|---|
| TOTAL FEES REQUESTED: | $245,667.50[1] | TOTAL COSTS REQUESTED: | $361.46 |
| TOTAL FEES REDUCED: | $ 12,577.50 | TOTAL COSTS REDUCED: | $0.00 |
| TOTAL FEES ALLOWED: | $233,090.00 | TOTAL COSTS ALLOWED: | $361.46 |

FINAL FEES AND COSTS ALLOWED: $485,346.44[2]

The Court, after having reviewed the Second and Final Application of Sugar Felsenthal Grais & Hammer LLP for Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors (the "Second and Final Application") and the supplement to the committee's Second and Final Application filed on September 2, 2014 (the "Supplement"), hereby makes the following findings of fact and conclusions of law in support of its order regarding the committee's Second and Final Application. Where appropriate, attached time and expense entries have been marked to reflect disallowance in whole or in part. The basis for each disallowance is reflected by numerical notations that appear on the left of each marked entry. The numerical notations correspond to the enumerated paragraphs below:

**(1) Duplication of Services**

The Court denies the allowance of compensation for services that duplicate those of another professional or paraprofessional. *See* 11 U.S.C. 330(a)(4)(A)(i). Reduction in fees is warranted if multiple attorneys from the same firm appear in court on a motion or argument or for a conference, *unless counsel adequately demonstrates that each attorney present contributed in some meaningful way. In re Pettibone Corp.,* 74 B.R. 293, 307 (Bankr. N.D. Ill. 1987) ("A debtor's estate should not bear the burden of duplication of services. If found in the record,

---

[1] This amount is for the second fee application which covers only the period May 2013 to June 2014. The award for the first fee application, in the amount of $251,202.25 in fees and $692.73 in expenses, shall by this order become final.

[2] This amount is the final allowance of fees and expenses in this case and reflects the total of allowed fees and expenses in the first and second fee applications.

1

duplication shall be disallowed by the court as unnecessary.") (emphasis added). It is also an accepted principle that generally no more than one attorney may bill for time spent in an intraoffice conference or meeting absent an adequate explanation. *See In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 716 (Bankr. N.D. Ill. 1991); *Pettibone,* 74 B.R. at 303.

In the present case, the Court finds that attorneys Aaron Hammer, a senior partner, and Christopher Horvay, now also a senior partner, and in many instances at least one associate, generally John O'Connor or Michael Brandess, worked on many matters together. The original descriptions suggest that often Hammer would direct Horvay and then Horvay would direct the associate, or Hammer and Horvay would perform essentially the same tasks and then in some instances the associate would carry out the directions of one or both. No justification was originally provided as to why all of these attorneys were needed to perform many of these tasks. The Court requested that committee counsel supplement its Second and Final Application to describe in more detail the justification for the participation of these several attorneys in many of these tasks.

In its Supplement, committee counsel states that the questioned duplicative services "represented necessary internal strategy and case administration between its professionals, rather than duplication, because of the complex and urgent nature of the services performed." Committee counsel goes on to say that "[t]hroughout its involvement in these Cases, [SugarFGH] faced complex legal issues requiring immediate, speedy action, especially with respect to high level strategy matters." The Court appreciates the supplemental information. However, as committee counsel will recall, this case was filed on January 19, 2013. The first sale motion was filed on January 21, 2013, and the sale was ultimately completed and approved on April 17, 2013. The disclosure statement and liquidating plan were filed on March 19, 2014, eleven months later, and confirmed on May 20, 2014. The second application is for the period May 1, 2013 through June 6, 2014. After April 17, 2013, when the sale was approved, and through confirmation of the liquidating plan thirteen months later, there were essentially no issues that could legitimately be described as "complex" or "urgent" or requiring either "speedy action" or "high level strategy," except perhaps those regarding the PBGC and insurance matters, for which full compensation is being awarded. As a result, the Court is disallowing the duplicative time, as indicated on the attached time entries. The Court has calculated the value of the reduced time at the blended cap rate as outlined in the attached summary chart.

### (2) Improper Allocation of Professional Resources

The Court denies the allowance of compensation in part for the attached designated tasks because a professional with a lower level of skill and experience or a paraprofessional could have performed the tasks. *Pettibone,* 74 B.R. at 303 ("Senior partner rates will be paid only for work that warrants the attention of a senior partner. A senior partner who spends time reviewing documents or doing research a beginning associate could do will be paid at the rate of a beginning associate. Similarly, non-legal work performed by a lawyer which could have been performed by less costly non-legal employees should command a lesser rate." (citation omitted)); *In re Wildman,* 72 B.R. 700, 710 (Bankr. N.D. Ill. 1987) (same); *see also In re Alberto,* 121 B.R. 531, 535 (Bankr. N.D. Ill. 1990) (determining use of partner appropriate where attendant complex legal issues warrant highly experienced practitioner).

In this particular case, the designated time entries appear to be mostly data entry with respect to the construction of a database for avoidance actions. This data entry was performed by attorney David M. Madden, a senior associate, who charged at a rate of $395.00 per hour. However, no justification was provided as to why these tasks could not have been performed by a paraprofessional at a lower rate. As a result, the Court cuts by 50% the allowed time for the descriptions so indicated.

### (3) Unreasonable or Inefficient Time

At the original hearing on the Second and Final Application, the Court also asked committee counsel to supplement its application to provide justification for the significant time spent during the second application period on matters related to the plan and disclosure statement. As indicated at the hearing and above, the Debtors' assets were all sold pursuant to a section 363 sale early on in the case. It thereafter took thirteen months before a plan was confirmed, but that plan was a relatively straightforward liquidating plan. In the Supplement, committee counsel indicates that the time incurred was necessary to generate, revise, or otherwise prepare multiple drafts of the plan, disclosure statement, and related documents. Committee counsel goes on to state that each of the tasks called for multiple rounds of negotiations with and comments from the Debtors, their former principals, and the proposed Liquidating Trustee. The Debtors confirm in their supplement what committee counsel has stated. However, Debtors' counsel also indicates that "[a]lthough the Debtors lacked certainty that their remaining resources would adequately support a confirmable Plan, the Committee was adamant that a sizeable recovery from avoidance actions was likely and that a Plan was feasible. The Committee asserted that a structured dismissal or conversion to Chapter 7 was unwanted."

The Court did indeed confirm the joint liquidating plan in this case. Whether a "sizeable recovery from avoidance actions" will result is still in doubt, but the Liquidating Trustee is proceeding to bring avoidance actions. As a result of the Supplement, the Court now better understands some of the issues facing committee counsel in preparing, negotiating, and finalizing the liquidating plan and disclosure statement. However, the Court still believes that the time expended was a bit excessive given the nature of this case and the issues faced by the parties.[3]

The Court denies the allowance of compensation for an unreasonable amount of time expended on tasks in light of the nature of the tasks and the experience and knowledge of the professionals performing the tasks. *Pettibone,* 74 B.R. at 306 ("The Court will determine what is the reasonable amount of time an attorney should have to spend on a given project. . . . An attorney should not be rewarded for inefficiency. Similarly, attorneys will not be fully compensated for spending an unreasonable number of hours on activities of little benefit to the estate.") (citation omitted); *Wildman,* 72 B.R. at 713.

Committee counsel spent 427.7 hours during the second application period on matters related to the plan and disclosure statement. Committee counsel also spent 79.5 hours during the

---

[3] Committee counsel also submitted a Fee Analysis regarding numerous recent chapter 11 liquidating cases. Committee counsel argues that the average value of the debtors' assets in those cases was similar to the Debtors' assets herein and that committee counsel in this case billed less than half of the average time and fees in the cases outlined in the Fee Analysis. Although the Fee Analysis is interesting, without knowing more about each case, the analysis is of little or no value to the Court.

3

first application period on plan and disclosure statement matters.  The plan was not complicated, although the negotiations among various constituencies appear to have been difficult and time-consuming.  And, as Debtors' counsel stated in its supplement, "the ultimate distribution to general unsecured creditors remains undetermined and may [very] well be insignificant."  The liquidation analysis prepared in support of the plan shows that the outcome for creditors from conversion to chapter 7 versus confirming a liquidating chapter 11 plan was a close call.

    As a result of the foregoing, the Court concludes that the time incurred by committee counsel in this category was somewhat excessive and reduces the time requested in this category in the second application by 5%, which amounts to a reduction of $6,995.00.

Dated:  October 3, 2014

                                        Janet S. Baer
                                        United States Bankruptcy Judge