**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Lyon Workspace Products, LLC, *et al.*[1] | ) Case No. 13-2100 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Honorable Janet S. Baer |
| | ) |
| | ) Hearing: September 26, 2017 at 9:30 a.m. |

**LIQUIDATING TRUSTEE'S FINAL REPORT AND**
**MOTION FOR ENTRY OF A FINAL DECREE**

Norman Newman, as Liquidating Trustee for the Lyon Workspace Products Liquidating Trust, (the "*Liquidating Trustee*,"), by and through counsel, hereby submits his Final Report and Motion for Entry of a Final Decree ("*Motion*") pursuant to the *Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated March 19, 2014* [Dkt. # 482] (the "*Plan*") and the *Liquidating Trust Agreement* [Dkt. # 509] approved in conjunction with the Plan.

**Jurisdiction**

1. The Court has jurisdiction over this matter under §§ 1334 and 157(a) of title 28 of the United States Code.

2. Venue is proper in this district under §§ 1408 and 1409 of title 28 of the United States Code.

3. The basis for the relief requested herein is § 350 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 3022 of the Federal Rules of Bankruptcy Procedures (the

---

[1] The Debtors in these jointly administered chapter 11 cases were originally Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

"*Bankruptcy Rules*") and Rule 3022-1 of the Local Rules of the Bankruptcy Court for the Northern District of Illinois.

## Background

1. Lyon Workspace Products, L.L.C., along with its affiliates and subsidiaries,[2] (the "*Debtors*") filed voluntary chapter 11 bankruptcy petitions on January 19, 2013 (the "*Petition Date*"). Early in these Cases, the Debtors engaged in the sale of substantially all of their assets.

2. Thereafter, the Debtors and Official Committee of Unsecured Creditors (the "*Committee*") submitted a joint plan of liquidation (the "*Plan*") to this Court providing for the orderly liquidation of the assets remaining in the Debtors' bankruptcy estates.[3] The Disclosure Statement with respect to the Plan (the "*Disclosure Statement*") contemplates that funds to pay claims under the Plan substantially derive from the recoveries from certain litigation claims. The Court confirmed the Plan by an order dated May 20, 2014 (the "*Confirmation Order*").[4]

3. Under the terms of the Plan, Confirmation Order, and related Liquidating Trust Agreement, all of the Debtors' remaining assets were transferred to the Liquidating Trust on June 6, 2014, the Plan effective date.

## Relief Requested

4. By this Motion, the Liquidating requests a final decree closing this bankruptcy case pursuant to § 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

---

[2] The other Debtors in these jointly administered chapter 11 cases are Pride Metals L.L.C., Sycamore Systems, L.L.C., Paris Metal Products, L.L.C., Durand Products, L.L.C., L&D Group, Inc., Miller Global Solutions, L.L.C., and Lyon Workspace Products, Inc.

[3] (Dkt. 482.)

[4] (Dkt. 528.)

2

5. Bankruptcy Rule 3022 provides, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

6. The advisory committee's note on the 1991 amendment to the Bankruptcy Rule 3022 lists "[f]actors that the court should consider in determining whether the estate has been fully administered[:]"

    (a) Whether the order confirming the plan has become final;

    (b) Whether deposits required by the plan have been distributed;

    (c) Whether the property proposed by the plan to be transferred has been transferred;

    (d) Whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

    (e) Whether payments under the plan have commenced; and

    (f) Whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022 Advisory Committee's note (1991); *see also In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990) (holding that the factors listed in the advisory committee's note are "illuminative" but noting that "all of the factors in the [note] need not be present before the Court will enter a final decree").

7. The Liquidating Trustee has fulfilled his duties under the Plan. The factors guiding a court's determination whether an estate has been fully administered support entry of a final decree and closing of this bankruptcy case.

**General Case Administration**

8. The Liquidating Trustee retained counsel (Sugar Felsenthal Grais & Hammer LLP, or "*SFGH*") and an accountant (Miller Cooper & Co., Ltd.) to assist him in the general

administration of the Liquidating Trust. SFGH was also retained to pursue litigation on behalf of the Liquidating Trust on a contingency basis.

9. The Liquidating Trustee and his professionals undertook a multitude of activities on behalf of the Estate, including but not limited to the following:

(a) Analysis of cash and other assets transferred to the Liquidating Trust, including potential collections from litigation activities, through review and analysis of thousands of company documents and electronic records relevant to the resolution of estate claims, obligations, and potential litigation;

(b) Resolved, and satisfied the Debtor's immediate post-confirmation obligations under the Plan, required to be paid out of Liquidating Trust Assets, including allowed administrative claims and professional fee claims and priority claims;

(c) Pursued and obtained orders approving post-confirmation administrative procedures, claims objection procedures, and adversary procedures, to streamline the ability of the Liquidating Trustee to resolve open claims and pursue chapter 5 avoidance actions while preserving the due process rights of parties in interest;

(d) Pursued and collected on class action claims in which the Debtors were eligible class members;

(e) Negotiated and sold remnant assets for highest and best value after seeking offers from multiple parties;

(f) Filed and pursued 76 adversary proceedings to resolution;

(g) Filed one omnibus claim objection resulting in the resolution of 28 disputed claims;

(h) Filed state and federal tax returns for the Debtors and the post-confirmation returns of the Liquidating Trust;

(i) Filed quarterly financial reports with the Office of the United States Trustee;

(j) Filed periodic post-confirmation narrative reports and presented matters at numerous post-confirmation omnibus hearings; and

(k) Completed or commenced other activities on behalf of the Liquidating Trust.

**Motions, Contested Matters and Adversary Proceedings**

A. **Status of Claims Administration, Objections and Distributions**

10. As has been reported in periodic narrative reports and omnibus hearings, all of the 950-plus claims filed or scheduled in the Debtors' cases have been resolved by allowance, allowance in part, or disallowance. All allowed secured, administrative, and priority claims have been paid. Overall, the post-confirmation claims reconciliation and objection process reduced allowed claims against the Liquidating Trust by approximately $100,000 in secured and priority claims.

B. **Litigation**

11. All litigation claims pursued by the Liquidating Trustee have been resolved. The Liquidating Trustee's pursuit of the return of preferential transfers, through professionals retained to do so on a contingency basis, resulted in the recovery of more than $1.6 million by the Liquidating Trust.

C. **Distributions**

12. In total, the Liquidating Trustee has distributed $1,911,835.08 to the date of this Motion, including payment of allowed administrative, priority, and general unsecured claims, post-confirmation fees and costs, and United States Trustee quarterly fees. Below is a summary of distributions made by the Liquidating Trustee by class.

| Class | Constituency | Total Distribution Percentage of Allowed Claims | Total Payout |
|---|---|---|---|
| Unclassified | Allowed Administrative Claims, U.S. Trustee Quarterly Fees and Professional and Non-Professional fees and expenses incurred by the Liquidating | 100% | $1,687,571.03 |

| Class | Constituency | Total Distribution Percentage of Allowed Claims | Total Payout |
|---|---|---|---|
| | Trustee | | |
| Unclassified | Priority Claims | 100% | $4,300.00 |
| 1 | Other Secured Claims | N/A | $0.00 |
| 2 | LWP Reimbursement Claim | 100% | $100,000.00 |
| 3 | General Unsecured Claims | .66% | $119,654.05 |
| 4 | Equity Security Interests | 0% | $0.00 |

13. Distributions to holders of allowed Claims and Interests have been made in accordance with the Plan.

## Termination of Claims and Balloting Services

14. In addition to the foregoing, the Liquidating Trustee requests entry of an order terminating the claims, noticing, and balloting services (collectively, the "*Services*") provided by Kurtzman Carson Consultants LLC ("*KCC*") pursuant to the *Order Approving Application of the Debtors to Retain and Kurtzman Carson Consultants LLC as Notice, Claims and Balloting Agent for the Debtors* [Dkt. # 103] (the "*KCC Retention Order*"), with the exception of the Post-Closing KCC Services (defined below). Upon termination of the Services, and with the exception of the Post-Closing KCC Services, KCC shall have no further obligations under the KCC Retention Order to the Court or any party in interest with respect to the Services in these chapter 11 cases.

15. Following entry of an order granting this Motion, KCC will forward to the United States Bankruptcy Court, Northern District of IL – Eastern Division, 219 S. Dearborn, Chicago, IL 60604 (the "*Clerk of Court*"), in the prescribed form and format, (a) all claims and updated

claims register, (b) a compact disc of all imaged claims, and (c) an excel spreadsheet containing all claims information, along with an updated mailing list. KCC will box and deliver all original claims to the Clerk of Court.

### Post-Closing KCC Services

16. Following the closing of these Cases, KCC shall remain responsible for: (a) remitting unclaimed distributions to the Clerk of Court, as set forth below; and (b) handling tax reporting for distributions made by the Liquidating Trustee.

(a) **Unclaimed Distributions**

17. On or around August 22, 2017 (the "*GUC Disbursement Date*"), at the direction of the Liquidating Trustee, KCC made distributions by check (the "*GUC Checks*") to holders of general unsecured claims on account of their claims.[5] The GUC Checks provide that they must be cashed within 60 days of issuance or will otherwise be cancelled.

18. By no later than December 1, 2017, KCC will: (i) cancel all outstanding and uncashed GUC Checks; and (ii) send a check made payable to the Clerk of Court for the total amount of unclaimed funds (the "*Unclaimed Funds*"). The Unclaimed Funds check will include the Debtors' case number and will be accompanied by an excel spreadsheet including the names, addresses and distribution amounts for each claimant of Unclaimed Funds.

(b) **Tax Information**

19. The Liquidating Trustee anticipates that certain post-case closing tax reports will need to be prepared for recipients of distributions made by the Liquidating Trustee. The reporting requirements likely pertain to Internal Revenue Code forms 1099-MISC and 1042-S

---

[5] Per section 7.14 of the Plan, distributions were made only to those creditors who were to receive distributions in the amount of $25.00 or greater.

7

concerning miscellaneous income and foreign tax withholdings, respectively. KCC will prepare such forms and issue them at them at appropriate time.

## Reserve

20. After making the final distribution to creditors described above, the Liquidating Trustee has established the following reserve (the "*Wind Down Reserve*") totaling approximately $20,000.00 for payment of final invoices of the Estates' professionals, payment of final quarterly US Trustee fees, projected expenses associated with the hearing on the final decree, and a general reserve for other wind up activities.

21. The Liquidating Trustee will make payments from the Wind Down Reserve following entry of the final decree, which should not delay closure of the case. See Fed. R. Bankr. P. 3002 adv. comm. note (1991 amend.) ("Entry of a final decree closing a chapter 11 case should not be delayed solely because payments required by the plan have not been completed.").

## Objections

22. **If you disagree with the relief requested in the Motion, you must file a response and serve it so that it is actually received by no later than 4:00 p.m. (Prevailing Central Time) on September 22, 2017.** Your objection, if any, to the Motion must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) be filed with the Bankruptcy Court, and (d) be served upon counsel to the Liquidating Trustee, Sugar Felsenthal Grais & Hammer LLP, 30 N. LaSalle St., Ste. 3000, Chicago, Illinois 60602 (Attn: Aaron L. Hammer and Mark S. Melickian) **so as to be received by no later than 4:00 p.m. (Prevailing Central Time) on September 22, 2017.**

### Notice

23. Notice of this Motion has been given to (a) the Office of the U.S. Trustee for the Northern District of Illinois; (b) all creditors; and (c) those parties that have requested notice in this Case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Liquidating Trustee submits that no further notice is necessary or required.

### No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

The Liquidating Trustee represents to the Court that the Plan, as confirmed, has been fully administered, pursuant to Bankruptcy Rule 3022 and applicable case law, on the following basis: (a) there are no outstanding motions or contested matters pending in the Bankruptcy Case; (b) the Order confirming the Plan has become a Final Order, in that there is no appeal of the Confirmation Order pending; (c) all deposits required under the Plan have been distributed. The property proposed by the Plan to be transferred has been transferred; (d) all of the Debtors' assets have been liquidated; and (e) all Liquidating Trust assets, other than the Reserve, have been distributed pursuant to the terms of the Plan.

WHEREFORE, the Liquidating Trustee respectively requests that this Court enter a final decree in this case, discharge the Liquidating Trustee, and grant such other relief as this Court deems equitable and just.

| | |
|---|---|
| Date: August 22, 2017 | Respectfully submitted: |

*Norman Newman, as Liquidating Trustee of the Lyon Workspace Products Liquidating Trust*

By: /s/ Aaron L. Hammer
      One of Its Attorneys

Aaron L. Hammer, Esq. (6243069)
Michael A. Brandess, Esq. (6299158)
**SUGAR FELSENTHAL GRAIS & HAMMER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.372.7951